*In re* ESTATE OF ADDIE DAVIS, a Disabled Person (Merlyn E. Whyte, Plaintiff-Appellee, v. Citicorp Savings, n/k/a Citibank, Defendant-Appellant).

First District (4th Division)   No. 1—93—1271

Opinion filed March 17, 1994.

526

David H. Addis and Jonathan L. Loew, both of Spritzer, Addis, Susman & Krull, of Chicago, for appellant.

David F. Platek, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Merlyn E. Whyte (hereinafter Whyte), as plenary guardian of the estate of Addie Davis, brought suit in the circuit court of Cook County against defendant, Citicorp Savings, now known as Citibank (hereinafter Citibank), to recover assets in the amount of $12,537.82 which Citibank paid to a presenter of two forged powers of attorney forms. Following a bench trial, the trial court entered judgment in favor of Whyte for the full amount.

On appeal, Citibank contends the trial court erroneously held it liable for Whyte's loss as it relied in good faith upon notarized powers of attorney and as there was no evidence that it should have known that the documents were forged.

We affirm.

Addie Davis had $12,537.82 in a savings account at Citibank. In

July 1991, Calvin Payne, Davis' nephew, told Christopher K. Boyd, a Citibank employee, that Davis requested that his name be added to her account. Payne presented Boyd with a general power of attorney form purportedly executed by Davis.

Boyd verified Davis' sole ownership of the account and checked Payne's identity by examining his driver's license and two credit cards. Boyd then explained that Citibank had its own special power of attorney form which needed to be completed before Citibank would acknowledge Payne's claim of agency. He signed the form and left with it.

Two days later, Payne returned and gave Boyd the Citibank power of attorney form with his signature, the apparent signature of Davis, and the signature and seal of a notary public. Boyd compared Davis' signature on the power of attorney form with her signature kept on Citibank microfiche. Based on this comparison and the notarization, Boyd concluded that the agency was genuine and added Payne as a signatory to Davis' account.

The next month, Payne met with Boyd and requested that all the funds in Davis' account be transferred to a checking account bearing only his name. Boyd gave Payne another Citibank power of attorney form which he indicated required completion before the funds could be transferred. Payne again signed the form and left with it.

Two days later, Payne returned and presented Boyd with the form reflecting his signature, the apparent signature of Davis, and the signature and seal of a notary public. Boyd compared Davis' signature on the form with the one Citibank kept on file and concluded it was genuine. Boyd subsequently created a checking account in Davis' name, in care of Payne, and transferred all of the funds held in the savings account to the newly created checking account. Payne later removed all of the funds.

Shortly thereafter, Whyte discovered that the powers of attorney were forged, and she was appointed temporary guardian of Davis' estate and was granted leave to initiate proceedings against Payne and Citibank. Whyte filed an action against Citibank on January 30, 1992, alleging breach of contract, negligence, and breach of fiduciary duty. She accordingly sought recovery of the $12,537.82. After a bench trial, the trial judge entered judgment in favor of Whyte for the entire $12,537.82 plus costs. Citibank appeals.

On review, Citibank asserts that the trial court erroneously held it liable for Whyte's loss pursuant to the Illinois Power of Attorney Act (Ill. Rev. Stat. 1991, ch. 110$^1$/2, par. 801—1) (hereinafter the Act).

■ The Act permits an individual to empower an agent to act on the individual's behalf during his lifetime, including times of disabil-

ity, and allows such individual to be confident that this relationship will be honored by third parties. Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 802—1.

■ An agency relationship is predicated upon the authority the agent derives from the principal and the execution of that authority. In this relationship, the binding of the principal is dependent on whether the agent acted with authority. Although there are three distinct types of authority, each must be based upon the acts of the principal and cannot be gleaned or assumed from the conduct of the agent.

■ Accordingly, before an agency is created, both a principal and an agent must exist. The Act defines "principal" as "an individual *** who signs a power of attorney or other instrument of agency granting powers to an agent." (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 802—3(e).) "Agent" is defined as the "person designated to act for the principal in the agency." (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 802—3(b).) The existence of a principal necessarily precedes the existence of both an agent and an agency.

■ It is undisputed that Addie Davis never authorized Calvin Payne to act in her behalf. The two documents Payne submitted to Citibank, which he purported to be genuine representations of the agency relationship, were forgeries. Payne's unilateral acts, therefore, were undertaken without any authority whatsoever from Davis and these acts were honored by Citibank. Accordingly, we are compelled to find that an agency did not exist.

While acknowledging the documents as forgeries, Citibank maintains that section 2—8 of the Act shields it from liability for disbursing all of the funds in Davis' account to Payne. The section provides: "Any person who acts in good faith reliance on a copy of the agency will be fully protected and released to the same extent as though the reliant had dealt directly with the principal as a fully-competent person." Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 802—8.

However, Citibank's assertion that the good-faith reliance provision of the Act applies to these circumstances is fallacious. In order to claim good-faith reliance on an agency, an agency, as defined by the Act, must first exist. As previously elucidated, there was no principal-agent relationship between Davis and Payne. At no time did Davis "sign[ ] a power of attorney *** granting powers to [Payne]" conferring authority upon him to transfer funds from her savings account to a checking account in his name. Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 802—3(e).

The application of sound logic to these facts demonstrates that section 2—8 of the Act is only to be construed within the context of

an agency pursuant to the Act. As no agency existed, Citibank's reliance upon this provision is unavailing. We conclude that the trial court properly found Citibank liable for Whyte's loss.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN and THEIS, JJ., concur.